UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID BASAK-SMITH AND MOLLY BASAK-SMITH, | Civil No. 3:19-cv-1974 (JBA) |
| *Plaintiffs*, | December 14, 2022 |
| *v.* | |
| UNITED INDUSTRIES CORP., | |
| *Defendant*. | |

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United Industries Corporation moves for summary judgment on Plaintiffs David Basak-Smith and Molly Basak-Smith's Connecticut Product Liability Act ("CPLA") and derivative loss of consortium claims on the grounds that Plaintiffs have "failed to disclose competent experts to support the essential liability and causation elements of their claim." (Def.'s Mot. for Summ. J. [Doc. # 54].) Plaintiffs object, arguing that they maintain a submissible case without expert testimony on both the defect and causation elements. (Pl.'s Object. to Mot. for Summ. J. [Doc. # 55].) For the reasons set forth below, summary judgment is GRANTED.

## I.    Factual Background

This case arises from Plaintiff David Basak-Smith's use of the Cutter Natural Outdoor Fogger ("Fogger"). (Def.'s Local R. 56(a)(1) Stmt. [Doc. # 54-2] ¶ 1.)[1] The Fogger is an insecticide that comes in an aerosol can. (Safety Data Sheet [Doc. # 59] at 1.) Plaintiff[2] applied

---

[1] Plaintiffs did not file a Local Civ. R. 51(a)(2) Statement disputing any of Defendant's facts or asserting material facts of their own, and so all facts contained in Defendant's Local R. 51(a)(1) Statement are considered admitted.

[2] Unless otherwise indicated, "Plaintiff," singular, refers to David Basak-Smith.

the product to his arms and legs, and then approached a burning brush pile. (Def.'s Local R. 56(a)(1) Stmt. ¶ 2.) "Thereafter," Plaintiff's arms and legs caught on fire, resulting in burn injuries. (*Id.*) Plaintiff also alleges that the medical treatment for his burns caused complications to preexisting gastrointestinal and colorectal cancer requiring "emergency surgery to resect his intestines and divert his bowels to an ostomy pouch through which bodily waste is emptied." (*Id.* ¶ 3-4.)

Plaintiffs brought suit under the Connecticut Product Liability Act ("CPLA") seeking recovery for the burns, the subsequent complications, and in Plaintiff Molly Basak-Smith's case, a loss of consortium. (Def.'s Mem. at 1.) The Court set an initial expert disclosure deadline of July 21, 2020, which was subsequently continued three times by joint motion to February 15, 2022. (*Id.* ¶ 5-7.) On February 11, 2022, Plaintiffs disclosed expert Gary M. Crakes, an economist whose opinions related to Plaintiff's economic losses resulting from his injuries; Plaintiffs never disclosed any experts who would opine on liability, causation, or medical issues. (*Id.* ¶ 8-9.)

## II.    Legal Standard

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 175 (2d Cir. 1995). "Where "reasonable minds could differ as to the import of the evidence,"

the question must be left to the finder of fact. *Cortes v. MTA N.Y. City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)).

## III.   Analysis

The CPLA provides the exclusive remedy for product liability actions in Connecticut, including "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product," and encompassing "all actions based on the following theories: [s]trict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." Conn. Gen. Stat. § 52-572m(b).

The allegations in the Amended Complaint can be grouped into two primary theories of liability: (1) defective design, (Am. Compl. ¶¶ 25(a)-(f), (aa)-(ee)), and (2) failure to discharge a duty to warn or instruct. (*See* Am. Compl. ¶ 25(g)-(z).) However, regardless of which theory of liability is advanced, all CPLA claims "are governed by the same elements[:] '(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.'" *Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 434 (2016).[3]

The second element—whether the product was defective such that it was unreasonably dangerous—can be evaluated under two tests: the consumer expectation test (formerly known as the ordinary consumer expectation test), or the risk-utility test (formerly known as the modified consumer expectation test). Under the risk-utility test, "the

---

[3] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

jury would weigh the product's risks and utility and then inquire, in light of those factors, whether a 'reasonable consumer would consider the product design unreasonably dangerous.'" *Izzarelli v. R.J. Reynolds Tobacco Co.*, 321 Conn. 172, 194 (2016). The risk-utility test is considered the "primary" test. *Id.* at 194.  The consumer expectation test is reserved for "those limited cases in which a product fails to meet a consumer's legitimate, commonly accepted minimum safety expectations," such as "res ipsa type cases." *Id.* at 194. Under the consumer expectation test, "'[t]o be considered unreasonably dangerous, the article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" *Izzarelli,* 321 Conn. at 185 (quoting *Slepski v. Williams Ford, Inc.*, 170 Conn. 18, 23, 364 A.2d 175 (1975)).

"The [] consumer expectation test would be appropriate when the incident causing injury is so bizarre or unusual that the jury would not need expert testimony" to "prove the product's defect." *Id.* at 202–03. On the other hand, "[n]either *Izzarelli* nor *Bifolck* state explicitly that expert testimony is required under the risk-utility test," although "both cases suggest it by juxtaposing the consumer expectation test, which does not require expert testimony, and the risk-utility test." *Frederick v. Deco Salon Furniture, Inc.*, No. 3:16-CV-00060 (VLB), 2018 WL 2750319, at *7 (D. Conn. Mar. 27, 2018); *Fajardo v. Bos. Sci. Corp.*, 341 Conn. 535, 565 (2021) (citing *Frederick*). At the very least, "expert testimony is required . . . when evidence regarding the defect . . . is beyond the ken of the average juror," *Fajardo*, 341 Conn. at 565 (2021), or where "the nexus between the injury and the alleged cause would not be obvious to the lay juror." *Water Pollution Control Auth. of the City of Norwalk v. Flowserve US, Inc.*, 782 F. App'x 9, 14–15 (2d Cir. 2019).

Defendant's position, as articulated at oral argument, is that the risk-utility test should be applied and expert testimony required based on the complexity of the product and the issues involved. According to Defendant, the Fogger's "complex and technical formula,

aerosol dispersion mechanics, flammability properties, and labeling," implicate "expert disciplines related to product chemistry, product engineering, gas dynamics, industry standards for pesticides and aerosols, fire investigation science, and consumer warnings." (Def.'s Mem. at 7.) Without such testimony, Defendant maintains that Plaintiffs cannot meet their burden of proof as to either defect or causation. (*Id.*) Plaintiffs, on the other hand, characterized the facts as constituting a "res ipsa" scenario that warrants application of the consumer expectations test. Expert testimony is not required, Plaintiffs argue, because "the everyday experiences of a particular product's users permits the inference that the product did not meet minimum safety expectations." (Pl.'s Object. at 7) (quoting *D'Ascanio v. Toyota Indus. Corp.,* 309 Conn. 663, 674 (2013)). The "experience of the plaintiff being ignited on fire immediately after use of the product" allows the Court to make such an inference here, Plaintiffs assert, especially because "the product is made for outdoor use, where fire and other flammable matters are reasonably present." (Pl.'s Object. at 7-8.)

The risk-utility test is the default test after *Izarelli,* and the one that the Court will apply here. The fact that Plaintiff—with Fogger spray recently applied to his arms and legs—ignited when approaching the brush fire is not so "bizarre or unusual" as to make it a "res ipsa" case in which the "product fails to meet a consumer's legitimate, commonly accepted minimum safety expectations," making application of the consumer expectation test is warranted. Unlike a situation where, for example, a product like a television spontaneously catches fire and the consumer can thus infer a defect because televisions should not catch fire, many chemicals are naturally flammable, and whether the combination of chemicals in this particular insecticide should have ignited under the circumstances is a question that should be evaluated under the risk-utility test, requiring the need for expert testimony. *Izzarelli*, 321 Conn. at 194; *see also Bourke v. MAN Engines & Components, Inc.,* 303 F. Supp. 3d 227, 236 (D. Conn. 2018) (applying the risk-utility test and dismissing a CPLA

claim for plaintiff's failure to present expert testimony on whether intercoolers, a component of diesel marine engines that cooled hot air, were defective).

These facts, which make it inappropriate to evaluate this case under the consumer expectation test, also dictate the need for expert testimony. In *White v. Mazda Motor of Am., Inc.*, 139 Conn. App. 39 (2012), *aff'd*, 313 Conn. 610, (2014) plaintiff sued under the CPLA alleging that his Mazda3 vehicle was defective and unreasonably dangerous because a month after purchasing it, he lifted the hood and flames erupted, inflicting injury. *Id.* at 40-41. The plaintiff produced an expert who offered an opinion on what most likely caused the fire, but specifically stated that he was not offering an opinion that the vehicle was defective. *Id.* at 43. Defendant moved for summary judgment on the grounds that the plaintiff had offered *no* evidence, expert or otherwise, to establish either that the vehicle was defective or that the defect was the cause of plaintiff's injuries. *Id.* at 42. The Connecticut appellate court affirmed the grant of summary judgment because the plaintiff was "required to provide the opinion of another expert that established sufficient prima facie evidence of the contested product liability issues in the case" but did not do so.  *Id.* at 50-51. Plaintiffs' argument that *White* is inapplicable misses its point, which was that "the issues involved complex questions outside of the ordinary knowledge and experience of jurors." *Id.* at 49. The court was evaluating the sufficiency of the expert's testimony because expert testimony was required, and the lack of competent expert testimony on the defect proved fatal to the plaintiff's case.

*White* is not an outlier; Plaintiffs' claims also bear substantial similarities to *Kost v. Avon Prod., Inc.*, where plaintiff brought claims for "strict liability, failure to warn, misrepresentation, nondisclosure, negligence, and breach of express warranty" arising out of skin irritation she suffered when applying Avon skin products. No. 3:11-CV-00914 MPS, 2013 WL 1397721, at *1 (D. Conn. Apr. 5, 2013). Defendant moved for summary judgment on the grounds that "expert testimony [was] required to establish defect and causation, and Plaintiff failed to disclose an expert to support her contentions[.]" *Id.* The court found that

"whether a particular skin cream is unreasonably dangerous, i.e., whether it would meet the ordinary consumer's expectations is beyond the field of ordinary knowledge and experience of judges and jurors." *Id.* (emphasis added). While acknowledging that "Connecticut state courts have permitted plaintiffs to establish defect without expert testimony in certain cases," the court distinguished the products at issue in those cases (airbags that did not deploy and a television set that caught on fire) from skin cream because "the chemical composition of a skin cream, its ingredients, and its effects" required expert testimony. *Id.* at *3. Further, the court noted that "'where the issue concerns a product's design . . . it would seem that expert opinion is the only available method to establish defectiveness, at least where the design is not patently defective.'" *Id.* at *4.

Plaintiffs' counsel attempted to distinguish this case from *Kost* and *Mazda* by asserting for the first time at oral argument that a "Safety Data Sheet"[4] for the Fogger, which states that there was a 4% concentration of isopropyl alcohol in the substance and referenced it as a "flammable aerosol," would allow a jury to infer that the Fogger was a flammable substance and that it caused the ignition event. (*See* Safety Data Sheet at 1.) Defendant's counsel responded that in order to determine whether the substance was *capable* of igniting, and with enough force to cause the same severity of burns Plaintiff sustained, Plaintiffs would still require an expert to interpret the facts contained in the Safety Data sheet by explaining what concentration of which substances are flammable, and under what conditions.

The Court agrees. As an initial matter, no affidavit or explanation is provided with the "Safety Data Sheet" to contextualize the information found there. The Court has no way of knowing, for example, whether the various references to flammability are meant to warn

---

[4] Plaintiffs did not submit this document as part of their initial opposition to the motion for summary judgment; however, the Court permitted Plaintiffs' counsel to submit the Safety Data Sheet as a supplement to the record.

against the combustibility of an aerosol can, or the flammability of the substance inside; Plaintiffs offer no background to explain under what circumstances the information was gathered, what standards were applied to the data gathered there, or who its intended audience is. Even if the Court inferred a *possibility* of flammability based on the document, there is no way to know whether the amount used by Plaintiff or the conditions under which he used it could have caused the specific events in question. Neither the parties' counsel, the Court, nor any theoretical jury could answer the questions raised by the Safety Data Sheet, because the design of the Fogger raises issues that required the "relevant background" and specialized knowledge of an expert to resolve. *Flowserve US, Inc.*, 782 F. App'x at 15.

Because even when drawing all inferences in favor of Plaintiffs, they have failed to show that they can establish at trial that the Fogger was defective, there is no need to even reach the question of whether Plaintiffs can establish that any alleged defect caused the fire, or that the fire caused the full extent of Plaintiff's injuries. However, an alternative basis for granting summary judgment as to the CPLA claim is that Plaintiffs' arguments on causation suffer from the same flaws: a missing step in the inferential chain which only an expert could bridge. Plaintiffs' counsel asserted at oral argument that the jury could infer that the Fogger was what caused Plaintiff's burns by comparing Plaintiff's testimony about which spots he applied or dripped the insecticide on himself to pictures of where Plaintiff was burned; however, as Defendant's counsel pointed out, an expert would still be needed to establish that it was the flammability of the Fogger that caused Plaintiff to ignite as claimed, rather than some combination of other factors like the material of Plaintiff's clothing, a change in the wind, or debris from the fire. As to Plaintiff's claim that he could establish that the incident exacerbated his preexisting gastrointestinal conditions and colorectal cancer without the testimony of a medical expert and through submission of his medical records alone, Plaintiff has failed to proffer those medical records, leaving the Court without any way of evaluating or crediting his assertions.

Finally, because Plaintiff Molly Basak-Smith's loss of consortium claim is dependent on her husband's CPLA claims, it cannot survive the grant of summary judgment against David Basak-Smith.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [Doc. # 54] is GRANTED as to both Plaintiffs. The Clerk is requested to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of December, 2022